877 F.2d 60
 2 Fed.Sent.R. 64
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Louis GUGLIELMI, Defendant-Appellant.
 No. 88-7656.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 11, 1989.
Decided June 9, 1989.
 
 Alan M. Dershowitz (Victoria B. Eiger, Nathan Z. Dershowitz, Dershowitz & Eiger, P.C., Harold J. Bender, Bender & Lawson on brief) for appellant.
 Debra Jo Stuart, Assistant United States Attorney (Thomas J. Ashcraft, United States Attorney on brief) for appellee.
 Before ERVIN, Chief Judge, and MURNAGHAN and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Louis Guglielmi, a federal prisoner, appeals from the denial of his motion under Fed.R.Crim.P. 35(a) and 35(b) for correction or reduction of sentence. We interpret the sentencing court's order denying Guglielmi's motion to intimate a misunderstanding of our holding in an earlier appeal, United States v. Guglielmi, 819 F.2d 451 (4th Cir.1987), cert. denied --- U.S. ----, 108 S.Ct. 731 (1988). ("Guglielmi I"). The order also reveals a conception of the statutes under which Guglielmi was sentenced with which we do not agree. We accordingly vacate the order and remand the matter for the appropriate discretionary review.
 
 I.
 
 2
 On October 14, 1985, following jury verdicts of guilty on five counts of violating 18 U.S.C. Sec. 1465 by aiding and abetting the transportation in interstate commerce of obscene films, five parallel counts of violating 18 U.S.C. Sec. 1462 by using and causing to be used a common carrier for carriage in interstate commerce of obscene films, and one count of violating 18 U.S.C. Sec. 371 by conspiring to commit the transportation offenses, the district court rendered sentence. The court paired the transportation counts for sentencing purposes, and fixed a five-year sentence for each paired count. Guglielmi also received a five-year sentence on the conspiracy count. Each sentence represents the statutory maximum. Sentences on the conspiracy and first paired transportation counts would run concurrently, with the remainder running consecutively. In addition to the total twenty-five year prison term, Guglielmi received fines totaling $35,000.00. Guglielmi has remained incarcerated since that day.
 
 
 3
 In Guglielmi I, we affirmed Guglielmi's conviction on direct appeal. We also considered Guglielmi's argument that his sentence was so disproportionate to his offenses as to violate the Eighth Amendment's proscription against cruel and unusual punishment. 819 F.2d at 456-57. We made plain our concern over the length of sentence, a concern particularly influenced by our perception that the FBI, which had instigated some of the shipments of obscene materials that inspired the transportation counts, could have increased Guglielmi's sentence further had it decided to continue ordering Guglielmi's films. Id. at 456. We also noted that Guglielmi, though he had for years been the principal of a business vending pornographic materials, had never before been convicted of any criminal offense. Id. at 457.
 
 
 4
 We nevertheless concluded that this circuit's construction of Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) does not require proportionality review for any sentence less than life imprisonment without possibility of parole. 819 F.2d at 457 (citing United States v. Rhodes, 779 F.2d 1019 (4th Cir.1985), cert. denied, 476 U.S. 1182, 106 S.Ct. 2916, 91 L.Ed.2d 545 (1986)). We therefore found ourselves without authority to disturb Guglielmi's conviction on Eighth Amendment grounds.
 
 
 5
 On May 8, 1988, more than two and a half years after beginning his confinement, Guglielmi presented the sentencing court with the motion the disposition of which we review today. The Rule 35(a) portion of the motion renewed the argument we had rejected in Guglielmi I, that the sentence was so disproportionate as to violate the Eighth Amendment. We find no more authority now than at the time of Guglielmi I to depart from the holding in Rhodes, and again hold that proportionality review cannot avail Guglielmi.[1]
 
 
 6
 The second portion of Guglielmi's motion assumed the legality of his sentence and pled for a reduction of sentence in the exercise of the sentencing court's discretion.[2] Guglielmi included a statement of personal background and statements from his supervisors at the federal prisons in which he had been confined.[3] Despite Guglielmi's request for a hearing, the sentencing court denied the motion four days after its filing without a hearing and without receiving any submission from the United States.
 
 
 7
 The sentencing court's order suggests only two rationales for the denial.[4] The court observed that "[Guglielmi] is still contending that [his] ... sentence was so severe that it violated the Eighth Amendment. On appeal the Fourth Circuit addressed this contention ... and determined that the sentence should not be disturbed." (emphasis added) As a second basis for denying the motion, the court observed that "[c]ontrary to [Guglielmi's] contention that obscenity claims are considered relatively unserious, this court considers obscenity crimes very serious, which can result in the "victims," that is those who view these films, committing sexual crimes." It is to these two planks, on which the sentencing court chose to rest its order, that we give attention in this appeal.
 
 II.
 
 8
 We take as axiomatic that the disposition of a Rule 35(b) motion is within the sound discretion of the sentencing courts. United States v. Stumpf, 476 F.2d 945, 946 (4th Cir.1973); see also United States v. Ames, 743 F.2d 46, 48 (1st Cir.1984), cert. denied, 469 U.S. 1165 (1985); ("The function of Rule 35 is to allow the district court to decide if, on further reflection, the sentence seems unduly harsh.") (citations omitted); Notes of Advisory Committee on Fed.R.Crim.P. Rule 35, ("[T]he underlying objective of Rule 35 ... is to "give every convicted defendant a second round before the sentencing judge, and [afford] the judge an opportunity to reconsider the sentence in light of any further information about the defendant or the case which may have been presented to him in the interim." ") (citing United States v. Ellenbogan, 390 F.2d 537, 543 (2d Cir.1968) (respecting 1983 amendments to Rule 35(b)). Equally axiomatic, though, is that the disposition must reflect a genuine exercise of discretion, a discretion not contoured by incorrect or inapplicable principles. See United States v. Lewis, 392 F.2d 440, 443 (4th Cir.1968) ("Of course, the legislature may deprive a court of a freedom of action ... but courts cannot so blind themselves ... A defendant is entitled to the unfettered and unset deliberation of the [sentencing] judge."); Stevens v. Warden, Maryland Penitentiary, 382 F.2d 429, 433 (4th Cir.1967), cert. denied, 390 U.S. 1031 (1968) (upholding a twenty-year sentence for armed robbery, but observing that the " "[u]sual" and routine imposition of the statutory maximum sentence upon first offenders and others who stand substantially in that position without regard being had to the nature and character of the offense and to the defendant's record and personality seems an abrogation of responsibility and a negation of the discretion which the law vests in the trial judge."). We believe the order denying Guglielmi's Rule 35(b) motion strongly suggests a decision influenced by inappropriate criteria.
 
 A.
 
 9
 In stating that the proportionality analysis portions of Guglielmi I conveyed our instruction that Guglielmi's sentence "should not be disturbed," the sentencing court indicates to us that it may have believed that Guglielmi I removed its discretion to conduct a plenary review of Guglielmi's sentence in a Rule 35(b) proceeding. Our holding in Guglielmi I, however, respected only our own authority to intrude on the sentencing decision. The holding ought in no way to have affected the sentencing court's review of the sentence under an entirely different legal rubric from that we applied in Guglielmi I.
 
 
 10
 Rule 35(b) makes clear that the sentencing court is free, as we are not, to revisit its sentencing decision and, through the application of its sense of mercy and justice, to decide whether the information a convict adduces warrants a reduction of sentence. The Rule makes clear as well that a discretionary appraisal of his case in favor of reduction is the movant's due. In this case, the sentencing court appears to have declined to exercise its discretion because of its misunderstanding of Guglielmi I. It is for the sort of considered appraisal Rule 35(b) demands that we return this matter to the sentencing court. See United States v. McCartney, 382 F.2d 116, 228 (9th Cir.1967) (remanding a Rule 35 disposition where sentencing court's denial of the motion leaves unclear whether it exercised discretion).
 
 B.
 
 11
 The second rationale for the order, representing the sentencing court's view of the gravity of Guglielmi's offenses, indicates more clearly than the first a principled exercise of discretion.[5] We disagree, however, that the principle has a basis in law. United States v. Vasquez, 638 F.2d 507, 534 (2d Cir.1980), cert. denied, 454 U.S. 847 (1981).
 
 
 12
 The sentencing court offered no citation to either of the instant transportation statutes or their legislative histories, or to a case from any other court, to support its view that trafficking in obscene materials is in some sense a "violent" crime because it foments violence by those who view the materials.[6] We have not unearthed any authority to support this conception of the statutes, and were directed to none by the United States during oral argument.[7]
 
 
 13
 Here, then, we face a rationale indicating too great, rather than too sparing, an exercise of discretion, for the sentencing court has introduced into its calculus a notion novel to the statutory law that cabins its discretion. We cannot agree that this notion is within the sentencing court's authority to entertain, and conclude that we must remand for a consideration of Guglielmi's motion informed by the criteria we have identified previously. United States v. Carter, 704 F.2d 1063, 1064 (9th Cir.1983) (sentencing court may not, on a Rule 35 motion, reduce sentence to a term less than statutorily mandated); United States v. Roe, 670 F.2d 956, 973 (11th Cir.), cert. denied, 459 U.S. 856 (1982) (sentencing court does not have free rein to define the factors it may consider in passing sentence); United States v. DiRusso, 535 F.2d 673, 674 (1st Cir.1976) ("The concept of [an illegal sentence] has been held to include ... sentences premised upon a major misunderstanding by the sentencing judge as to the legal bounds of his authority.") (citations omitted); United States v. Laca, 499 F.2d 922, 927 (5th Cir.1974) (sentencing judge may not look to defendants' refusal to confess or plead guilty as a factor counseling a higher sentence); United States v. Haseltine, 419 F.2d 579, 581-82 (9th Cir.1970), overruled on other grounds, 412 U.S. 346, 351 & n. 3 (1973) (sentencing court may not assume sentencing powers statutorily committed to the executive branch); Lewis, 392 F.2d at 442-43; Robinson v. United States, 313 F.2d 817, 820-21 (7th Cir.1963) (sentencing judge may not provide for parole where statutory offenses carry mandatory sentences.).
 
 III.
 
 14
 Because we believe the sentencing court's order indicates error in the court's disposition of the motion, we vacate the order and remand the matter for reconsideration.
 
 
 
 [1]
 Although we treat Guglielmi's reiteration of his Guglielmi I arguments briefly, we observe that Guglielmi's notice of appeal from the denial of his Rule 35 motion indicates a dispute only with the refusal to reduce sentence under Rule 35(b), and not with the decision holding the sentence lawful under the Eighth Amendment
 
 
 [2]
 Rule 35(b), as applicable to offenses committed prior to Nov. 1, 1987, generally grants the sentencing court discretion to reduce a sentence, and specifically permits changing a sentence of incarceration to one of probation. Pub.L. No. 98-473, Title II, Sec. 215(b), 98 Stat. 2015 (1985) amended Rule 35(b) to allow a reduction of sentence only for changed circumstances and only on the government's motion
 
 
 [3]
 The personal statement revealed, among other items of biography, that Guglielmi was fifty-nine years old. Guglielmi's wife is wheelchair bound and suffers from several maladies. Guglielmi's son is in a Maryland institution for the criminally insane
 A memorandum from Guglielmi's supervisor in the commissary at FCI Danbury, his first place of confinement, states that "[Guglielmi] has shown himself to be a highly dependable and hard working person. He is highly punctual, always on time, invariably being early for his job assignment.... He is an eager and willing worker performing all variety of jobs.... He is always the first inmate to report for work and by and large the last to leave at night. Guglielmi has demonstrated a positive attitude towards both staff ... and fellow inmates ... and as result [sic] is well liked.... Guglielmi has proven himself to be an asset to the daily operations of the ... commissary." A second, later, memorandum from Guglielmi's supervisors at Danbury relates that "Guglielmi's work habits have reflected a great degree of efficiency and dedication toward all the details assigned to him.... Guglielmi assits [sic] with all of the functions in the Commissary and volunteers to work where ever [sic] there is a need. [He] works on a [sic] average of 60 hours per week. He has surpassed the standards of his assignments.... His loyal service to this department has more than earned these words on his behalf."
 
 
 [4]
 The body of the order reads in its entirety as follows:
 THIS MATTER is before the Court on Defendant's Motion for reduction of sentence pursuant to Rules 35(a) and 35(b) of the Federal Rules of Criminal Procedure.
 Defendant is still contending that the Court's sentence was so severe that it violated the Eighth Amendment. On appeal the Fourth Circuit addressed this contention by Defendant and determined that the sentence should not be disturbed.
 The conviction and sentence were affirmed, a petition for en banc hearing was denied by the Fourth Circuit, and the United States Supreme Court denied certiorari by order dated January 11, 1988.
 Contrary to Defendant's contention that obscenity crimes are considered relatively un-serious, this Court considers obscenity crimes very serious, which can result in the "victims," that is those who view these films, committing sexual crimes.
 NOW, THEREFORE, IT IS ORDERED that Defendant's Motion is DENIED.
 
 
 [5]
 An alternative conclusion could be that this rationale, like the first, reveals that the judge abjured to exercise his discretion, based on his belief that the fact of a conviction alone warrants rejection of a motion for a reduced sentence. This conclusion would, no less than the first, recommend our remand of the matter for a more searching review
 
 
 [6]
 It seems germane to note once more that most of the recipients of the material judged obscene were FBI agents. There is no evidence that the materials incited the agents, or anyone else, to violence
 The United States at oral argument urged a different view of Guglielmi's crimes as "violent", indicating that some of the films depicted the brutalization of animals and, generally, acts degrading to their human subjects. We agree with the United States and the Guglielmi I panel that the materials adjudicated obscene are of the vilest sort. We do not, however, believe that the sort of violence the United States described is the same that influenced the sentencing court to deny Guglielmi's Rule 35 motion. If it were, we would have the same doubts that this violence is relevant to Guglielmi's sentence for the crimes of which he stands convicted.
 
 
 [7]
 The familiar rationales behind state and federal statutes forbidding sales of obscene materials, and for curbing first amendment protections for sellers, is that the materials appeal to the prurient interest, depict sexual conduct in a patently offensive way, and lack serious redeeming value. Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419, 431 (1973); see also Pope v. Illinois, 481 U.S. ---, 107 S.Ct. ----, 95 L.Ed.2d 439, 445 (1987); Jenkins v. Georgia, 418 U.S. 153, 97 S.Ct. 2750, 41 L.Ed.2d 642, 650 (1979). As we observed in Guglielmi I, it was not improper for a trial judge to make it "clear that he regarded the distribution of such material as a serious offense against society." 819 F.2d at 956. Such a remark simply respects the rationales behind the statutes, which proscribe only what the pertinent community finds sexually offensive and bereft of any saving quality
 Far different, though, from remarking on the gravity of indisputably criminal conduct is the introduction of a rationale unknown to the statute. We are aware that some in government and society believe that pornography tends to induce criminal behavior. See, e.g., Attorney General's Commission on Pornography, First Report ("The Meese Commission Report") 215 (1986) (concluding that at least sexually violent materials may provoke those exposed to the materials to violence); but see The Report of the Commission on Obscenity and Pornography (1970) (finding no evidence that erotic materials cause increased rates of sexual crime or sexual deviancy). We do not dispute Congress' ability to take account of evidence that activity not itself violent may have violence as a by-product; indeed, the statutes criminalizing narcotics trafficking are an obvious example of legislation prompted in part by such evidence. In enforcing such statutes, it is appropriate for sentencing courts to respect Congressional intent by taking account of the crime's tendency to breed violence. We simply find no indication that Congress enacted the obscenity statutes at issue with an eye toward curbing "victims' " tendencies to commit sexual crimes.